IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| WILLIAM MICHAEL FREDERICK TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH MATAL, performing the functions and duties of Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:15-cv-1607 (LMB/JFA) |
| WILLIAM MICHAEL FREDERICK TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH MATAL, performing the functions and duties of Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:15-cv-1684 (LMB/JFA) |
| WILLIAM MICHAEL FREDERICK TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH MATAL, performing the functions and duties of Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:16-cv-12 (LMB/JFA) |

MEMORANDUM OPINION

Before the Court are post-judgment motions filed by both pro se plaintiff William Michael Frederick Taylor ("Taylor" or "plaintiff") and the Director of the U.S. Patent and Trademark Office ("defendant" or "USPTO"). Plaintiff has filed three identical Motions for Reconsideration ("Pl.'s Mot."), Case No. 1:15-cv-1607, [Dkt. No. 107]; Case No. 1:15-cv-1684, [Dkt. No. 106]; Case No. 1:16-cv-12, [Dkt. No. 99], in which he argues that the Court's decision to grant defendant's motions for summary judgment should be reconsidered. In addition to opposing plaintiff's motions, defendant has filed three identical Motions for Expenses ("Def.'s Mot."), Case No. 1:15-cv-1607, [Dkt. No. 103]; Case No. 1:15-cv-1684, [Dkt. No. 100]; Case No. 1:16-cv-12, [Dkt. No. 95],[1] seeking to recover the reasonable "expenses of the proceedings" the USPTO incurred in this litigation, pursuant to 35 U.S.C. § 145. All motions have been fully briefed and oral argument would not aid the decisional process. Because nothing in plaintiff's motions convinces the Court that it erred in its decision, his motions for reconsideration will be denied, and because the expenses requested by the USPTO are reasonable and authorized under § 145, its motions will be granted.

I. BACKGROUND

The procedural and factual background of these civil actions has been fully recounted in the Court's Memorandum Opinion. See Taylor v. Matal, Nos. 15-cv-1607; 15-cv-1684; 16-cv-12, 2017 WL 3446532, at *2-4 (E.D. Va. Aug. 10, 2017) (hereinafter "Mem. Op."). In brief, plaintiff filed three civil actions against defendant under 35 U.S.C. § 145 seeking a de novo review of three patent applications that had been denied by the USPTO. See Case No. 1:15-cv-1607; Case No.

---

[1] The parties have filed identical motions in each of the three civil actions. For ease of reference, all docket citations to the reconsideration and expenses pleadings will be to Case No. 15-cv-1607, with docket numbers appearing the first time a pleading is referenced. All other references to pleadings will be preceded by the relevant case number.

2

1:15-cv-1684; Case No. 1:16-cv-12. On August 10, 2017, after discovery and full briefing by both parties, the Court entered summary judgment in favor of defendant in all three actions, finding that the evidence "overwhelmingly demonstrate[d] that plaintiff was not in possession of the claimed invention as of the 1993 priority date." See Mem. Op. at *29.

## II. DISCUSSION

### A. Motion for Reconsideration[2]

#### 1. Standard of Review

A motion to reconsider is usually brought under Federal Rules of Civil Procedure 59 or 60. Motions to alter or amend final judgments under Fed.R.Civ.P. 59(e) may be granted if necessary "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir.1998) (citations omitted). The power to grant or deny a motion under Rule 59(e) is discretionary, and "[i]n general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Id. (internal quotation marks omitted); see Robinson v. Wix Filtration Corp., 599 F.3d 403, 411 (4th Cir. 2010).

Rule 60(b) provides, in relevant part, that a

> court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly-discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment that has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

---

[2] Plaintiff concurrently noticed appeals of the Court's grant of summary judgment in all three civil actions. Although a notice of appeal normally divests a district court of jurisdiction, the Fourth Circuit has held that a district court retains jurisdiction over a contemporaneously filed Rule 59(e) or Rule 60(b) motion. See Fobian v. Storage Tech. Corp., 164 F.3d 887, 890 (4th Cir. 1999).

3

A movant under Rule 60(b) must also "demonstrate the existence of a meritorious claim or defense" to the action. Square Constr. Co. v. Wash. Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir. 1981). A motion for reconsideration is "not authorized when it is nothing more than a request for the district court to change its mind." Lee X v. Casey, 771 F. Supp. 725, 728 (E.D. Va. 1991).[3]

2. Analysis

Plaintiff's primary argument is that the Court "overlooked" evidence establishing that he possessed his inventions as of the 1993 priority date by misunderstanding his diagrams and the evidence of his expert. Pl.'s Mot. at 2. As an initial matter, plaintiff raised many of these allegations in the summary judgment pleadings. See, e.g., Mem. Op. at *16, 18, 26. His arguments essentially boil down to disagreement with the Court's conclusions, which is not a proper basis upon which to reconsider a previous decision, see United States v. Williams, 674 F.2d 310, 312 (4th Cir. 1982) ("Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue."); however, out of deference to plaintiff's pro se status, the Court will consider his arguments.

For an invention to be patent-eligible, the patentee must "demonstrate that [he] is in possession of the invention claimed." Zoltek Corp. v. United States, 815 F.3d 1302, 1308 (Fed.

---

[3] It is unclear from plaintiff's motions whether he is seeking reconsideration under Rule 60(b) or Rule 59(e); however, a motion to alter or amend a judgment under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Even for pro se plaintiffs, the Court is without jurisdiction to extend the time to file under that Rule. See Fed. R. Civ. P. 6(b)(2); Goodman v. Everett, 388 F. App'x 269, 270 (4th Cir. 2010) (noting that "the district court is without jurisdiction to extend [the] time period" established by Rule 59(e)) Because plaintiff failed to file his motions within 28 days of entry of the judgment order, reconsideration must be governed by Rule 60(b). Even if the Court could consider plaintiff's motions under Rule 59, they would fail because plaintiff does not allege a change in controlling law, nor does he identify any new evidence not available at trial and, as explained in this Memorandum Opinion, plaintiff has not established that there was a clear error of law or injustice in the Court granting defendant's summary judgment motions.

4

Cir. 2016). "A mere wish or plan for obtaining the claimed invention does not satisfy the written description requirement." Novozymes A/S v. Dupont Nutrition Biosciences APS, 723 F.3d 1336, 1344 (Fed. Cir. 2013).

In his motions, plaintiff claims that Figures 2 and 3 of his patent applications "have been overlooked," Pl.'s Mot. at 3, and that his "original diagram" has been misunderstood, id. at 5. He disputes the Court's description of his diagram as a "one-page, hand-drawn sketch," arguing that it shows "micromodal use [of his invention] with orientation, time of day, date and personal preferences . . . with wireless connection to theoretical Internet sites." Pl.'s Reply at 4 [Dkt. No. 113]. This argument is unpersuasive. The Memorandum Opinion included a full discussion of both Figures 2 and 3 which were actually reproduced in the opinion and reviewed with reference to the patent specification. See Mem. Op. at *3, 18. Regardless of the characterization of his "original diagram," visual representations of the desired output of the invention, without more, are insufficient to demonstrate that plaintiff was in possession of the invention as of the claimed priority date. As explained in the Memorandum Opinion, "the question is not whether plaintiff had started work by 1992 but whether he had finished it by May 1993, the priority date on which he claimed he was in possession of the invention." Mem. Op. at *24 n.17 (emphasis added). In his own deposition, plaintiff admitted that, at the time he drew the sketch, he "knew nothing about patents. . . . [he] simply had the idea." Id. at *29.

Plaintiff also points to his "preparatory work to build a local database in Kent, in 1992 and early 1993," as evidence that he was in possession of the invention. See Pl.'s Mot. at 2, 10. But he also admitted in his deposition that he did not begin development work until 1995. Mem. Op. at *17. Additionally, the identified prototypes of plaintiff's invention date from 1997 to 2002, and his own exhibits reveal that these prototypes did not include many of the functions described in the patent specifications, further calling into question whether the specifications demonstrated

5

possession of the invention. Id.[4] Even in his Motions for Reconsideration, plaintiff reaffirms that he only had "[p]ossession of the core of the idea in April 1992." Pl.'s Mot. at 10. Although it is clear from this record that plaintiff is an intelligent and creative man who likely had a good and interesting idea, simply having an idea or concept falls short of satisfying the requirement for patentability. See Novozymes A/S, 723 F.3d at 1344.

Plaintiff further alleges that the Court "overlooked or misunderstood" his experts' evidence. Pl.'s Mot. at 8. He contends, as further proof of possession, that one expert, Steve White ("White"), "actually built [plaintiff's] system," id., and that his other experts testified that they had the necessary skills to build his system in 1993, id. at 8-9. That argument is incorrect; the Court did not overlook the evidence from these experts in its opinion, which actually examined each expert opinion offered by both parties. See Mem. Op. at *8-9. White was part of a team plaintiff hired to develop his invention, but the uncontroverted evidence established that White did not create the necessary data component of the system until 1997. Id. at *8. The Court similarly evaluated the claims of plaintiff's other experts and found that they were unpersuasive. See, e.g., id. at *8-9 ("Miller stated that he had a high level understanding of the invention but was 'not conversant with any of the details' and had not read plaintiff's patent specification." (citations omitted)); id. at *9 ("Dr. Whiting elaborated that, '[i]n 1993, GPS receivers would have been in their infancy, and

---

[4] Plaintiff also claims that the so-called "Eldridge Patent," U.S. Patent No. 5,717,392, for which the application was submitted in 1996 and granted in 1998, includes many of the technical aspects of his invention. Pl.'s Mot. at 2. The thrust of plaintiff's argument is unclear, but he appears to maintain that granting this patent demonstrates that it was possible to create his invention (or one that would infringe on his claims) only two years after his patent application was filed. See Pl.'s Reply at 5. In any event, this evidence is irrelevant; the question is not what was possible or what was created in 1996, but whether the plaintiff was in possession of his invention in May 1993. That a subsequent patent application was granted does not provide proof that plaintiff's application should have been granted. Moreover, the existence and details of the Eldridge patent were cited throughout the proceedings, see, e.g., Pl.'s Mot. Strike at 3 [Dkt. No. 49], and considered by the Court. Therefore, plaintiff is essentially asking the Court to change its mind, which is not a proper basis for reconsideration.

GPS wasn't declared operational . . . until 1994." (alterations in original) (citations omitted)). The expert representations that it was possible to build this invention simply do not address whether the invention had been made at the time the Application was filed. See id. at *17. None of plaintiff's arguments establish that the Court erred in concluding that he was not in possession of his invention as of the claimed priority date.

Plaintiff also attacks the opinion of defendant's expert, Dr. Peter Dana ("Dana"), alleging that Dana exceeded his acknowledged expertise in GPS technology and that his report should have been struck from the record. Pl.'s Mot. at 14-15. He claims that Dana was not an expert in patent matters and was unqualified to "judge the work of [plaintiff's] 10 US patent attorneys who have devoted 24 years to preparing [plaintiff's] patent claims." Id. at 14. Plaintiff mischaracterizes Dana's report. Dana reviewed the patent specification and determined that it included "functions that could not yet [have been] implemented in a mobile configuration by 1994. Mem. Op. at *10. Dana did not draw any legal conclusions or express any expertise in patent law; he simply applied his own expertise in GPS technology and developing software for radio and GPS-based navigation systems to conclude that "[t]he application does not suggest how the assemblage of components might be incorporated into a working protoype." Id. Plaintiff argues that Dana's answers in his deposition were incorrect, but as the Court previously found, plaintiff's "disagreement with [Dana's] answer[s] to technical questions cannot be the basis for" disqualifying an expert. See Case No. 15-cv-1607, [Dkt. No. 67] at 2. This argument similarly provides no basis for the Court to grant reconsideration.[5]

---

[5] Plaintiff also argues that a statement in defendant's Motions for Expenses, that the Court "credited Dr. Dana as an expert in the GPS field," qualifies as "newly-discovered evidence" sufficient to warrant reconsideration under Rule 60(b)(2). See Pl.'s Reply at 7. This is plainly incorrect; defendant never claimed that Dana was an expert in any area other than "GPS, GPS-system design, and electronic navigation." See, e.g., Case No. 15-cv1607, [Dkt. No. 57] at 7. Moreover, plaintiff previously attacked Dana's expertise in a Motion to Strike, which was denied.

7

Plaintiff also claims that reconsideration is warranted under Rule 60(b)(3) because the patent examiner in charge of his applications committed fraud by waiting 10 years to require his initial application to be divided. Pl.'s Reply at 9. As proof of fraud, he points to an alleged statement by the examiner that he was "afraid to grant these patents because they read onto everything in the mobile space." Id. This argument is unavailing. In the Fourth Circuit, to prevail on a Rule 60(b)(3) motion, the moving party must have a meritorious defense; must prove misconduct by clear and convincing evidence; and the proved misconduct must have prevented the moving party from fully presenting its case. See Schultz v. Butcher, 24 F.3d 626, 630 (4th Cir.1994). "Rule 60(b)(3) focuses not on erroneous judgments as such, but on judgments which were unfairly procured." Id. at 631. Plaintiff provides no citation to the alleged statement sufficient to demonstrate fraud by "clear and convincing evidence," nor does he demonstrate that the patent examiner "prevented [him] from fully presenting his case." Regardless of the initial examiner's decision, plaintiff has now had that decision reviewed three times—first by the Patent Trial and Appeal Board ("PTAB"), on rehearing before the PTAB, and finally on de novo review by this Court. None of these decisions were concerned with the effect his patents might have if granted, but rather focused on the requirements for patentability by examining the intrinsic evidence in the written description, specification, and claims of the applications. As such, plaintiff's allegations of fraud on the part of the patent examiner do not warrant reconsideration.

Plaintiff separately argues that he was prevented from effectively presenting his case because he could not file documents electronically and because his filings were printed in black and white. Pl.'s Mot. at 2, 21. He claims the design elements of his invention must be seen in color to be properly understood. Id. at 21. This argument is unpersuasive. The Court granted plaintiff

---

Case No. 15-cv-1607, [Dkt. No. 67]. Thus, the evidence plaintiff identifies is not "newly-discovered" and has already been considered by the Court.

leave to file his evidence in DVD form, and acknowledged in its Memorandum Opinion that it "endeavored to evaluate plaintiff's evidence and give it due consideration." Mem. Op. at *8 n.10. There are citations to the DVD evidence throughout the Court's opinion, all identified by an asterisk before the citation, demonstrating that plaintiff's evidence was received and considered by the Court. In sum, none of plaintiff's arguments provide a basis upon which to reconsider the decision granting summary judgment to defendant.[6]

### B. Motion for Expenses

Defendant has filed motions seeking to recover its reasonable expenses incurred in the proceedings, pursuant to 35 U.S.C. § 145. See, e.g., Case No. 15-cv-1607, [Dkt. No. 103]. Section 145 allows an applicant dissatisfied with a decision of the PTAB to appeal to the United States District Court for the Eastern District of Virginia to present "new evidence" in support of his claim; however, it also "impose[s] on the applicant the heavy economic burden of paying [a]ll the 'expense of the proceedings' regardless of the outcome." See 35 U.S.C. § 145; Hyatt v. Kappos, 625 F.3d 1320, 1337 (Fed. Cir. 2010) (en banc), aff'd, 566 U.S. 431 (2012). It is well settled that the term "expenses" as used in § 145 encompasses the costs associated with court reporters, transcription, printing, travel expenses, and expert witnesses. See Hyatt, 625 F.3d at 1337; NantKwest, Inc. v. Lee, 162 F. Supp. 3d 540, 5543 (E.D. Va. 2016, rev'd in part on other grounds sub nom., NantKwest, Inc. v. Matal, 860 F.3d 1352 (Fed. Cir. 2017); Sandvik Aktiebolag v. Samuels, 1991 WL 25774, at *1 (D.D.C. Feb. 7, 1991). Defendant seeks to recover a total of $35,755.26, consisting of $4,621.75 in court reporter and transcript expenses and $31,133.51 in expert witness expenses charged by Dana. Def.'s Mot. at 3. Defendant also alleges that it incurred

---

[6] Plaintiff makes a final argument that it was unreasonable for "the USPTO to criticize the [patent] claims" because plaintiff paid a "small fortune" to U.S. and U.K. lawyers. This argument is clearly irrelevant and need not be addressed.

a significant expense of $80,827.92 in personnel expenses for which it may seek reimbursement at a later date.[7]

Plaintiff concedes in his opposition to defendant's motions that he is only "willing to pay the court reporter's fee of $4,621,75," Pl.'s Opp. Mot. Expenses [Dkt. No.106], and the documentation submitted by the USPTO demonstrates that these fees are reasonable, see Def.'s Mot., Ex. 2. Plaintiff does dispute reimbursing the USPTO for its expert expenses, on the ground that Dana's expert opinion was flawed and unreliable, pointing to answers given at Dana's deposition with which plaintiff disagrees. Pl.'s Opp. Mot. Expenses at 5-10. He also maintains that the expert opinion should be struck because Dana is not an expert in legal or patent issues. Id. These arguments are meritless. During the litigation of his claims, plaintiff filed a Motion to Strike Evidence Given by Dr. P. Dana, e.g. Case No. 15-cv-1607, [Dkt. No. 50], raising essentially the same arguments. The Court found that Dana was qualified to serve as an expert in "[GPS], GPS-driven system design, and electronic navigation" and denied plaintiff's motion. See Case No. 15-cv-1607, [Dkt. No. 67] at 2-3. Moreover, as defendant points out, plaintiff's "subjective disagreement with an expert witness's answer to a technical question" provides no legal basis to relieve him of his obligation under § 145 to pay the USPTO's "expenses of the proceeding." Case No. 15-cv-1607, [Dkt. No. 110] at 4-5.

Furthermore, the documentation submitted by Dana establishes that his fees were reasonable. He charged for a total of 113 hours, which included evaluating the three patent

---

[7] The parties agree that any award of the USPTO's personnel expenses should be stayed pending the Federal Circuit's en banc decision on whether § 145 authorizes an award of USPTO attorneys' fees. See NantKwest, Inc. v. Matal, No. 2016-1794, 2017 WL 3747354, at *1 (Fed. Cir. Aug. 31, 2017) (requesting that the parties brief the issue of whether the panel correctly determined "that 35 U.S.C. § 145's '[a]ll the expenses of the proceedings' provision authorizes an award of [USPTO's] attorneys' fees?"). Because the Federal Circuit's decision will answer the exact legal question before the Court, a delay is appropriate to preserve judicial resources and will not prejudice either party.

applications at issue, the separate PTAB opinions affirming denial of the applications, and plaintiff's new evidence in support of patentability, as well as preparing his own 80-page report and being deposed. See Def.'s Mot., Ex. 3. His hourly rates of $250 per hour for preparing his report and $350 per hour for appearing at a deposition are not unreasonable. See, e.g., NantKwest, Inc. v. Lee, 162 F. Supp. 3d at 546 (finding expert witness rates of between $800 and $1,000 not excessive). Id. On this record, the Court finds that the USPTO's expert expenses are reasonable and must be paid by plaintiff.

### III. CONCLUSION

For the reasons stated above, in an order to be issued with this Memorandum Opinion, plaintiff's Motions for Reconsideration Case No. 15-cv-1607, [Dkt. No. 107]; Case No. 15-cv-1684, [Dkt. No. 106]; Case No. 16-cv-12, [Dkt. No. 99] will be denied and defendant's Motions for Expenses, Case No. 1:15-cv-1607, [Dkt. No. 103]; Case No. 1:15-cv-1684, [Dkt. No. 100]; Case No. 1:16-cv-12, [Dkt. No. 95], will be granted in part and held in abeyance as to personnel expenses.

Entered this _6_ day of November, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge